IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FRED A. CONNER,**                                                **PLAINTIFF,**

**VS.**                                                              **CIVIL ACTION NO. 4:05CV33-P-B**

**AMERICAN PUBLIC LIFE**
**INSURANCE COMPANY,**                                        **DEFENDANT.**

## MEMORANDUM OPINION

These matters come before the court upon Defendant's Motion for Judgment on the Pleadings [23-1] and Motion to Stay Consideration of Plaintiff's Cross-Motion for Partial Summary Judgment [32-1]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

Fred A. Conner purchased a cancer treatment policy from American Public Life Insurance Company ("APL") on July 1, 1992. In the "Benefits Schedule" of the policy, which appears to serve both as a table of contents and a truncated explanation of benefits, the term "actual charges" is used approximately twenty-four times to describe what will be covered. For example, the Benefits Schedule states that the policy will cover "110% of Actual Charges" with regard to "Blood/Plasma/Platelets" or "Radiation Therapy and Chemotherapy (In or Out of Hospital)." Nowhere in the policy is the term "actual charges" defined.

In the "Benefit Provisions" section thereafter, the policy states in pertinent part that the insurer "will pay the benefits shown in the Schedule for Cancer Treatment Benefits for **expenses incurred** for the treatment of Cancer...." (emphasis added).

1

As indicated by the Benefits Schedule, the "Schedule for Cancer Treatment Benefits" goes into more detail about coverage. Most relevant to the instant inquiry regards the Radiation Therapy and Chemotherapy Benefit which states in pertinent part that the insurer "will pay **110% of the actual charges** made for teleradiotherapy ...[and] **110% of the actual charges** for cancericidal chemical substances ...." (emphasis added).

In January 2004 Conner was diagnosed with cancer. It is undisputed that Conner submitted $56,985.00 for radiation and $4393.99 for chemotherapy treatments and that APL only paid $47,012.62 and $3625.04, respectively.

Conner filed a complaint with the Mississippi Insurance Department arguing that he was underpaid $16,869.83 because APL improperly defined "actual charges" to mean the amount the providers accepted after negotiation with the insurer, not the amount the plaintiff's medical providers actually billed for their services.

On February 3, 2005 the plaintiff filed a complaint in this court against APL. On February 10, 2005 he filed an Amended Complaint which seeks class certification for claims of breach of contract, bad faith, and breach of the duty of good faith and fair dealing. This court stayed certification of the class until such time the court deemed Conner's individual claims to have merit.

On August 3, 2005 APL filed the instant motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Essentially, APL argues that "actual charges" unambiguously means the amount of money offered by the insurer that the provider finally accepts in full satisfaction of the debt as opposed to the amount of money initially charged. The plaintiff filed his response and a cross-motion for partial summary judgment. The plaintiff's essential position is that "actual charges" unambiguously means the amount of money initially charged. Alternatively, the term "actual

2

charges" is ambiguous and therefore should be construed in favor of the insured. APL filed a rebuttal. Thereafter, both parties filed several supplements to their briefs of recent trial court decisions interpreting the term "actual charges." On September 9, 2005 APL filed the instant motion to stay ruling on the plaintiff's cross-motion for summary judgment pending the court's decision on APL's motion on the pleadings.

Thus, the primary issues at hand are (1) whether the term "actual charges" in the subject policy is ambiguous, and, if not, (2) whether "actual charges" means the pre-negotiation price or the post-negotiation price.

## II. DISCUSSION

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides:

> **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

"A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.." *Id.* "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* "The [district] court may

dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id*. "In analyzing the complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* at 312-313. "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."*Id*. at 313. "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." *Id*. at 313 n. 8

**B. Judicial Interpretation of Insurance Contracts in Mississippi**

"The proper construction of an insurance contract provision is a question of law...." *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 717 (Miss. 2004). In *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. (Miss.) 1998), the Fifth Circuit summarized Mississippi law for judicial interpretation of an insurance contract:

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written.
> Second, it reads the policy as a whole, thereby giving effect to all provisions.
> Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder.
> Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer.
> Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured.
> Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer.
> Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible.
> Finally, although ambiguities of an insurance policy are construed against the insurer,

> a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

(reformatted for convenience; internal citations omitted).

With further regard to ambiguity, "[w]hen terms in an insurance contract are ambiguous, the interpretation of those terms falls to the court." *Blackledge v. Omega Ins. Co.*, 740 So.2d 295, 298 (Miss. 1998). "The language of an insurance policy will be deemed ambiguous if it is reasonably subject to more than one interpretation." *Universal Underwriters Ins. Co. v. Buddy Jones Ford-Lincoln-Mercury, Inc.*, 734 So.2d 173, 176 (Miss. 1999).

## C. Analysis

As alluded to above, the threshold issue is whether "actual charges" is ambiguous in the subject policy. In other words, is the phrase "actual charges" reasonably subject to more than one interpretation? After thorough consideration of the briefs, including the decisions in *Claybrook v. Central United Life Ins. Co.*, 387 F.Supp.2d 1199 (M.D.Ala. 2005) and other trial court decisions submitted by the parties, this court concludes that the very nature of the dispute before the court evidences a contractual ambiguity. The phrase "actual charges"– which is used over forty times in the subject policy (half in the table of contents and half in the body of the policy) but is nowhere defined in the policy – can reasonably be interpreted in at least one of two ways. On one hand, "actual" charges can reasonably indicate the amount the provider literally charges the insurer. For example, if the provider types "$100.00" for a service on the bill it sends to both the insurer and the insured, then the amount the provider "actually" charged was $100.00 even if the provider intended to accept less than $100.00 from the insurer. In other words, with this interpretation "actual charges" can reasonably be interpreted as meaning what was factually charged as opposed to what was finally accepted. This, of course, is the interpretation advocated by the plaintiff. On the other hand, "actual

charges" could reasonably be taken to mean the amount the provider actually intended to charge the insurer, given the provider and the insurer's knowledge of their custom and practice of the provider accepting less from the provider. In this disingenuous custom and practice the provider deliberately inflates the amount charged, knowing that the insurer will only pay around 75% of any amount actually charged or actually billed.

The defendant in this case argues that "actually charged," when read in conjunction with "expenses incurred" in the provision stating that the insurer "will pay the benefits shown in the Schedule for Cancer Treatment Benefits for expenses incurred for the treatment of Cancer...," unambiguously means the negotiated amount. Citing the Mississippi Supreme Court's decision in *Reserve Life Insurance Company v. Coke*, 183 So.2d 490 (Miss.1966), the defendant argues that "expenses incurred" means the amount the plaintiff was legally liable to pay. Since the provider and the insurer both allegedly intended that the amount expected to be paid was to be somewhere around 75% of the amount actually or literally charged or billed, the defendant maintains, then the plaintiff was only legally liable to pay the negotiated amount and is therefore not entitled to the pre-negotiated amount. Having considered the issue closely, the court concludes that this argument does not defeat or assuage the inherent ambiguity in the undefined term "actual charges."

"[A] policy should be drafted to accommodate the average person who will give its terms a general reading. An insurance policy should be strictly construed against the insurer, and the insurer has the burden of phrasing the terms in clear language." *Burton v. Choctaw County*, 730 So.2d 1, 9 (Miss. 1997). The insurer in this case should have phrased their policy to more clearly indicate whether they would be paying the insured 110% of the amount initially and literally charged by the provider or the amount ultimately accepted by the provider and the insurer. They did not. Therefore,

6

this court concludes that the term "actual charges" as used but not defined in the subject policy means the amount of money the provider typed on the bills and sent to the insured and insurer.

Taking into account the standards for Rule 12(c) motions for judgment on the pleadings, the court concludes that when viewed in the light most favorable to the plaintiff, the Amended Complaint states a valid claim for relief and the motion for judgment on the pleadings should be denied.

### D. The Plaintiff's Cross-Motion for Partial Summary Judgment

In response to the defendant's Rule 12(c) motion, the plaintiff filed a cross-motion for partial summary judgment. On September 6, 2005 the defendant filed a motion to stay consideration of the plaintiff's cross-motion for partial summary judgment. The basis therefor is that the motion for partial summary judgment is based on affidavit, deposition testimony, and other parol evidence that is beyond the four corners of the subject insurance policy and should therefore not be considered unless and until the defendant's motion for judgment on the pleadings is denied.

The court agrees with this argument. Therefore, the motion to stay consideration of the plaintiff's motion for partial summary judgment should be granted. Since the court has denied the defendant's Rule 12(c) motion, the parties are directed to contact the U.S. Magistrate Judge for a new scheduling order regarding discovery as well as class certification.

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings [23-1] should be denied and their Motion to Stay Consideration of Plaintiff's Cross-Motion for Partial Summary Judgment [32-1] should be granted. Accordingly, an Order shall issue forthwith,

**THIS DAY** of September 6, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE